UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

OMAR SANTIAGO,

                    Plaintiff,                  **MEMORANDUM & ORDER**
                                                                                    09-CV-1383 (MKB)
                    v.

BRIAN FISCHER and ANTHONY ANNUCCI,

                    Defendants.

------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On April 2, 2009, Plaintiff, who is currently proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 against Brian Fischer, the former Commissioner of the New York State Department of Correctional Services ("DOCS"), Anthony J. Annucci, former DOCS Deputy Commissioner and Counsel, Lucien Leclaire, Jr., former DOCS Acting Commissioner, Glenn S. Goord, former DOCS Commissioner, and John/Jane Does 1–50, who include DOCS supervisory, training and policy making personnel. (Compl. ¶¶ 10–14, Docket Entry No. 1.) Plaintiff alleged violations of his rights under the Fourteenth Amendment to the United States Constitution arising from the imposition and enforcement of a term of post-release supervision against Plaintiff. (*Id.* ¶¶ 28–40.) Defendants moved to dismiss all of Plaintiff's claims. On November 18, 2009, the Honorable Dora Irizarry granted in part and denied in part Defendants' motion, dismissing Defendants Leclaire and Goord from the action.[1] *Santiago v. Fischer*, No. 09-CV-1383, 2009 WL 3852001, at *9 (E.D.N.Y. Nov. 18, 2009).

---

[1] On March 26, 2012, this action was reassigned from Judge Irizarry to the undersigned. (ECF Entry dated Mar. 26, 2012.)

On July 29, 2011, Defendants answered the Complaint.[2] (Answer, Docket Entry No. 19.) On November 10, 2014, Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Defs. Mot. for J. on the Pleadings ("Defs. Mot."), Docket Entry No. 27; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 28.) For the reasons discussed below, the Court grants in part and denies in part Defendants' motion.

I. **Background**

   a. **Factual background**

On or about October 30, 2001, Plaintiff was sentenced to three years' incarceration for committing second degree assault. (Compl. ¶ 16.) The sentencing judge imposed a term of incarceration, and did not impose a term of post-release supervision ("PRS"). (*Id.*) However, on April 6, 2004, when Plaintiff completed his three-year sentence, DOCS administratively imposed a five-year term of PRS on Plaintiff, which was scheduled to expire on August 13, 2009. (*Id.*)

On June 9, 2006, two years into Plaintiff's PRS term, the Second Circuit granted a habeas petition filed by an individual incarcerated on an administratively-imposed PRS term, and held that it violated the due process clause for DOCS to administratively impose PRS terms in cases where the sentencing judge did not impose a PRS term. *Earley v. Murray*, 451 F.3d 71, 75–76 & n.1 (2d Cir. 2006) (citing *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464 (1936)); (*see also* Compl. ¶ 24 (citing *Earley*, 451 F.3d at 75–76).) The Second Circuit held that that clearly established Supreme Court precedent prohibited PRS terms that were imposed only by DOCS and not sentencing judges and stated that "[t]he only cognizable sentence is the one imposed by the judge" and that "[a]ny alteration to that sentence, unless made by a judge in a subsequent

---

[2] On July 30, 2012, Magistrate Judge Robert Levy granted Plaintiff's counsel's motion to withdraw. (Order dated July 30, 2012.)

proceeding, is of no effect." *Earley*, 451 F.3d at 75. As a result, "[a]ny addition to that sentence not imposed by the judge was unlawful" and the petitioner's administratively-imposed PRS term was, therefore, invalid. *Id.*

Despite the 2006 ruling in *Earley*, Plaintiff's PRS term remained in effect. (Compl. ¶ 17.) On February 27, 2008, a parole violation warrant was issued for Plaintiff's arrest based on Plaintiff's violations of his PRS terms. (*Id.*) After his arrest, Plaintiff was re-incarcerated until April 17, 2008. (*Id.*) On April 29, 2008, two years after *Earley*, the New York State Court of Appeals struck down administratively-imposed terms of PRS as inconsistent with the New York Criminal Procedure Law. *See People v. Sparber*, 10 N.Y.3d 457, 470 (2008); *Garner v. N.Y.S. Dep't of Corr. Servs.*, 10 N.Y.3d 358, 362 (2008). In response, the New York State legislature enacted Correctional Law section 601-d and Penal Law section 70.85, which took effect on June 30, 2008 and required that individuals who were subject to administratively-imposed terms of PRS be resentenced. N.Y. Corr. L. § 601-d; N.Y. Penal L. § 70.85.

On or about September 5, 2008, Plaintiff was again arrested for violating the terms of his PRS, which were still in effect at the time, and he was re-incarcerated. (Compl ¶ 18.) During that re-incarceration, pursuant to the New York Court of Appeals' decision in *Sparber*, and under Correction Law § 601-d, Plaintiff was brought before the trial court that had originally sentenced him on the underlying second degree assault conviction. (Defs. Decl. in Supp. Mot. to Dismiss, Ex. C., Docket Entry No. 7.) The trial judge declined to impose PRS on Plaintiff "in the interests of justice and equity." (*Id.*; Compl. ¶ 19.) Thereafter, on December 8, 2008, Plaintiff was released pursuant to a writ of habeas corpus. (Compl. ¶ 19.)

Following his release, Plaintiff commenced this action, claiming that Defendants acted "[i]n flat defiance of [*Earley*]'s clear constitutional commands" and "promulgated, implemented,

enforced, and/or failed to rectify a policy practice, and custom mandating administrative imposition and enforcement of PRS on persons without authorization from a sentencing court." (*Id.* ¶ 25.) Plaintiff alleges that Defendants' "policy, practice, and custom [of] mandating the imposition and enforcement of PRS on individuals not sentenced to PRS" was "promulgated, effectuated, and/or enforced in bad faith and contrary to clearly established law." (*Id.* ¶ 22.) According to Plaintiff, both Defendants Fischer and Annucci were "responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States." (*Id.* ¶¶ 10–11.)

### b. Procedural background

After Plaintiff commenced this action, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing Plaintiff's state law claims, all claims against Defendants in their official capacities, and all claims against certain Defendants in their individual capacities. *Santiago*, 2009 WL 3852001, at *9. Only the claims against Defendants Fischer and Annucci in their individual capacity survived, and the Court denied them qualified immunity. *Id.* Defendants appealed the denial of qualified immunity to the Second Circuit. (Docket Entry No. 16.) On October 4, 2010, pursuant to a stipulation between the parties, Defendants withdrew their appeal. (Docket Entry No. 20.)

On July 29, 2011, Defendants answered the Complaint. (Answer ¶¶ 28–34.) Thereafter, the parties requested a number of adjournments and extensions in light of ongoing state and federal litigation related to the legal issues underlying Plaintiff's claims and Defendants' qualified immunity defense. (Min. Entry dated Mar. 28, 2012; Min. Entry dated May 4, 2012; Min. Entry dated June 1, 2012.) On September 18, 2012, the case was stayed pending a decision by the New York State Court of Appeals related to the imposition of PRS terms. (Min.

Entry dated Sept. 18, 2012.) The stay remained in effect through the Second Circuit's 2013 decision in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), *cert. denied sub. nom. Vincent v. Yelich*, --- U.S. ---, 135 S. Ct. 948 (2015), and through the July 2014 denial of an *en banc* rehearing in *Vincent*. (Min. Entry dated June 5, 2013; Min. Entry dated July 30, 2014.) Thereafter, Defendants moved for judgment on the pleadings. (Docket Entry No. 27.)

## II. Discussion

### a. Standard of review

"In deciding a Rule 12(c) motion, [courts] 'employ[ ] the same . . . standard applicable to dismissals pursuant to [Rule] 12(b)(6). Thus, [courts] will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [the plaintiff's] favor.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (second, third and fifth alteration in original) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." (citation omitted)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (discussing Rule 12(b)(6)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). However, the court need not accord "a legal conclusion

couched as a factual allegation" the same presumption of truthfulness. *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

### b. Plaintiff has stated an actionable deprivation of his constitutional rights

Defendants assert that Plaintiff has failed to state any claim against Defendants based on the imposition and enforcement of Plaintiff's PRS term. (Defs. Mem. 10–14.) Relying on the Second Circuit's decision in *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010), Defendants argue that Plaintiff cannot state an actionable constitutional deprivation based on any of the following acts: DOCS' failure to revoke Plaintiff's PRS term, the revocation of Plaintiff's PRS and his re-incarceration, or DOCS' failure to release Plaintiff from re-incarceration or to have Plaintiff resentenced. (Defs. Mem. 11–12.) In a single-page response, Plaintiff rests on the arguments made in his opposition to Defendants' motion to dismiss. (Pl. Opp'n Letter Mot. ("Pl. Opp'n") 1, Docket Entry No. 32.)

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (alteration in original) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). As the Second Circuit held in *Earley*, when an individual is subjected to a PRS term that has been imposed administratively rather than by the sentencing judge, the individual has been deprived of due process rights guaranteed by the Fourteenth Amendment. *Earley*, 451 F.3d at 75–76.

Even where there has been a constitutional deprivation, to state a claim for a damage award under Section 1983, a plaintiff must also allege the defendant's direct or personal involvement in the alleged constitutional deprivation. *Victory v. Pataki*, --- F.3d. ---, ---, 2016

6

WL 373869, at *13 (2d Cir. Feb. 1, 2016) (The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006))); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[T]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." (citations omitted)). Accordingly, "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)). A defendant's personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (emphasis omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). As a result, liability may attach "when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983)).

In denying Defendants' motion to dismiss, Judge Irizarry held that Plaintiff alleged an actionable deprivation of his constitutional rights arising from the administrative imposition and enforcement of his PRS term. *See Santiago*, 2009 WL 3852001, at *4 ("[P]laintiff is clearly alleging a violation of the Fourteenth Amendment's right against deprivation of liberty 'without

7

due process of law.'"). As Judge Irizarry previously noted, "Plaintiff's complaint accuses [D]efendants of 'promulgat[ing], implement[ing], enforc[ing], and/or fail[ing] to rectify' the DOCS policy of administratively imposing PRS, despite the fact that *Earley* found this policy unconstitutional." *Id.* (citing Compl. ¶ 7). Defendants now argue that, in light of Second Circuit decisions that post-date Judge Irizarry's decision, it is clear that Plaintiff has not stated a constitutional deprivation. (Defs. Mem. 10–14.) As discussed below, however, Defendants' arguments are premised on a misreading of the Second Circuit decisions on which they rely and on a recasting of Plaintiff's Complaint.

In support of their motion for judgment on the pleadings, Defendants rely primarily on the Second Circuit's post-*Earley* decision in *Scott*. (*Id.* at 10–12.) In *Scott*, the plaintiff had been sentenced in July of 1999 and, upon his release in July of 2002, he was subject to an administratively-imposed PRS term that was not mentioned at his sentencing. *Scott*, 616 F.3d at 103. Prior to the decision in *Earley*, the plaintiff violated the terms of his PRS and was arrested based on the issuance of an arrest warrant. *Id.* He was thereafter sentenced to an additional term of incarceration. *Id.* During his incarceration, the plaintiff obtained habeas relief, and he subsequently filed a section 1983 action against the defendant, Fischer, who "caused" his arrest warrant to issue. *Id.* at 103–104. In addition to Fischer, the plaintiff also brought claims against other defendants who "actively participated" in the unconstitutional conduct. *Id.* The Second Circuit affirmed the district court's grant of qualified immunity to the defendants for claims related to their pre-*Earley* conduct, holding that "it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Id.* at 107.

The Second Circuit also rejected the argument presented by the *Scott* plaintiff that the

due process of law.'"). As Judge Irizarry previously noted, "Plaintiff's complaint accuses [D]efendants of 'promulgat[ing], implement[ing], enforc[ing], and/or fail[ing] to rectify' the DOCS policy of administratively imposing PRS, despite the fact that *Earley* found this policy unconstitutional." *Id.* (citing Compl. ¶ 7). Defendants now argue that, in light of Second Circuit decisions that post-date Judge Irizarry's decision, it is clear that Plaintiff has not stated a constitutional deprivation. (Defs. Mem. 10–14.) As discussed below, however, Defendants' arguments are premised on a misreading of the Second Circuit decisions on which they rely and on a recasting of Plaintiff's Complaint.

In support of their motion for judgment on the pleadings, Defendants rely primarily on the Second Circuit's post-*Earley* decision in *Scott*. (*Id.* at 10–12.) In *Scott*, the plaintiff had been sentenced in July of 1999 and, upon his release in July of 2002, he was subject to an administratively-imposed PRS term that was not mentioned at his sentencing. *Scott*, 616 F.3d at 103. Prior to the decision in *Earley*, the plaintiff violated the terms of his PRS and was arrested based on the issuance of an arrest warrant. *Id.* He was thereafter sentenced to an additional term of incarceration. *Id.* During his incarceration, the plaintiff obtained habeas relief, and he subsequently filed a section 1983 action against the defendant, Fischer, who "caused" his arrest warrant to issue. *Id.* at 103–104. In addition to Fischer, the plaintiff also brought claims against other defendants who "actively participated" in the unconstitutional conduct. *Id.* The Second Circuit affirmed the district court's grant of qualified immunity to the defendants for claims related to their pre-*Earley* conduct, holding that "it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Id.* at 107.

The Second Circuit also rejected the argument presented by the *Scott* plaintiff that the

due process of law.'"). As Judge Irizarry previously noted, "Plaintiff's complaint accuses [D]efendants of 'promulgat[ing], implement[ing], enforc[ing], and/or fail[ing] to rectify' the DOCS policy of administratively imposing PRS, despite the fact that *Earley* found this policy unconstitutional." *Id.* (citing Compl. ¶ 7). Defendants now argue that, in light of Second Circuit decisions that post-date Judge Irizarry's decision, it is clear that Plaintiff has not stated a constitutional deprivation. (Defs. Mem. 10–14.) As discussed below, however, Defendants' arguments are premised on a misreading of the Second Circuit decisions on which they rely and on a recasting of Plaintiff's Complaint.

In support of their motion for judgment on the pleadings, Defendants rely primarily on the Second Circuit's post-*Earley* decision in *Scott*. (*Id.* at 10–12.) In *Scott*, the plaintiff had been sentenced in July of 1999 and, upon his release in July of 2002, he was subject to an administratively-imposed PRS term that was not mentioned at his sentencing. *Scott*, 616 F.3d at 103. Prior to the decision in *Earley*, the plaintiff violated the terms of his PRS and was arrested based on the issuance of an arrest warrant. *Id.* He was thereafter sentenced to an additional term of incarceration. *Id.* During his incarceration, the plaintiff obtained habeas relief, and he subsequently filed a section 1983 action against the defendant, Fischer, who "caused" his arrest warrant to issue. *Id.* at 103–104. In addition to Fischer, the plaintiff also brought claims against other defendants who "actively participated" in the unconstitutional conduct. *Id.* The Second Circuit affirmed the district court's grant of qualified immunity to the defendants for claims related to their pre-*Earley* conduct, holding that "it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Id.* at 107.

The Second Circuit also rejected the argument presented by the *Scott* plaintiff that the

DOCS defendants were liable for their failure to act after *Earley* was decided, noting that the complaint was devoid of any allegations to support such a claim. *Id.* at 108. The Second Circuit emphasized that:

> The only allegation contained in the complaint that addresses the [DOCS] defendants' purportedly unconstitutional actions with respect to Scott's PRS is that they "adopted, approved, and/or ratified the imposition of mandatory PRS on individuals such as plaintiff sentenced to determinate terms of imprisonment in New York State courts but not sentenced to mandatory PRS."

*Id.* at 108 (brackets and citation omitted). As a result, the Second Circuit rejected the plaintiff's arguments that the DOCS defendants were liable for failing to excise the plaintiff's PRS term and to either release the plaintiff from prison or have her resentenced. *Id.* at 109 ("[N]o facts are alleged in the complaint that would support a finding that [DOCS] had the power, through its employees, unilaterally to revoke Scott's PRS despite the conceded fact that [DOCS] had imposed it."); *id.* at 110 ("There is no allegation of a failure to release or failure to seek resentencing in [the] complaint.").

While *Scott* dismissed the plaintiff's claims, it did not alter *Earley*'s holding — that administratively-imposed PRS terms violate due process — which the Second Circuit reaffirmed in *Vincent*. *Vincent*, 718 F.3d at 166. In *Vincent*, the Second Circuit upheld a group of plaintiffs' claims against Annucci, based on his alleged failure to act after *Earley* to rectify unlawful PRS terms. *Id.* at 178. The plaintiffs in *Vincent*, who had been subjected to administratively-imposed PRS terms, and brought an action against multiple DOCS officials, including Annucci and Fischer. *Id.* at 161. The plaintiffs alleged that the DOCS defendants knew that the plaintiffs had not been sentenced to PRS terms, and that the DOCS defendants "unlawfully and unconstitutionally devised and promulgated a DOCS policy of administratively adding a five-year PRS period to prisoners' records even if the sentencing court had failed to

9

mention PRS." *Id.* at 164.

The Second Circuit vacated the grant of qualified immunity to Annucci for claims related to the enforcement of administratively-imposed PRS terms, and the Second Circuit explicitly distinguished the insufficient pleadings at issue in *Scott*. *Id*. at 171. The Second Circuit noted that in *Scott*, the complaint "did not assert that DOCS failed to relieve Scott of the PRS conditions imposed on her in 2002 or to remove PRS from her record," and that "even read 'liberally . . . [Scott's] challenge [was] directed at the administrative imposition of PRS, not the failure to take action to remove it after it was imposed.'" *Id.* (quoting *Scott*, 616 F.3d at 108). By contrast, the complaint in *Vincent* "differ[ed] from *Scott* in that [the *Vincent* plaintiffs] challenged the enforcement of administratively imposed PRS." *Id.* In vacating the grant of qualified immunity, the Second Circuit explained that after *Earley*, "the State was required either to have [the plaintiffs] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve them of those conditions." *Id.* at 172. Because the complaint in *Vincent* alleged that Annucci took no action and, instead, continued enforcing unlawful PRS terms, those allegations established that he violated clearly established law and was therefore not entitled to qualified immunity. *See id.* at 173–74.

Here, consistent with Judge Irizarry's prior denial of Defendants' motion to dismiss, the Court finds that Plaintiff has plausibly alleged a deprivation of his constitutional rights and Defendants' participation in that violation. Defendants do not dispute that Plaintiff was subjected to an administratively-imposed PRS term and that Plaintiff was re-incarcerated on two occasions pursuant to the enforcement of that PRS term. (Answer ¶ 18.) In light of *Earley*, those facts plausibly allege a due process violation. *See Earley*, 451 F.3d at 75–76. As to these

specific Defendants, Plaintiff has plausibly alleged their involvement in that due process violation. Plaintiff's allegations include precisely the allegations the Second Circuit found to be critically absent from the complaint in *Scott* and present in the complaint in *Vincent*: Defendants' failure to act in light of *Earley*. *Compare Scott*, 616 F.3d at 109–10 (identifying deficient pleadings) *with Vincent*, 718 F.3d at 171–72 (distinguishing *Scott*'s deficient pleadings). Plaintiff alleges that Fischer, "[a]s the Commissioner of DOCS," and Annucci, "[a]s Deputy Commissioner of, and Counsel to, DOCS," were both "responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States." (Compl. ¶¶ 10–11.) As Judge Irizarry recognized in denying Defendants' motion to dismiss, Plaintiff alleges that after administratively imposing his PRS term, Defendants ignored *Earley*'s clear holding by "'promulgat[ing], implement[ing], enforc[ing], and/or fail[ing] to rectify' the DOCS policy of administratively imposing PRS." *Santiago*, 2009 WL 3852001, at *4 (alterations in original). According to Plaintiff, Defendants' continued enforcement and failure to act were in bad faith and directly caused Plaintiff to be re-incarcerated. (Compl. ¶¶ 21–22, 27.) Taking Plaintiff's allegations of Defendants' inaction as true, these allegations are sufficient to plausibly allege that Defendants knowingly enforced the unlawful PRS terms or were deliberately indifferent to the ongoing due process violations created by those PRS terms.[3]

---

[3] Citing *Scott*, Defendants also argue that Plaintiff lacks standing for his claims because Plaintiff has not alleged that he would have been released earlier had DOCS moved to release him prior to his writ of habeas corpus. (Defs. Mem. 19–20.) In *Scott*, the Second Circuit stated in *dicta* that assuming the plaintiff had stated a constitutional violation based on DOCS' failure to release her from custody, because the plaintiff agreed that DOCS lacked authority to grant such a remedy, it was unlikely that there was any injury-in-fact traceable to DOCS. *Scott v. Fischer*, 616 F.3d 100, 111 (2d Cir. 2010). Here, as discussed above, Plaintiff's claims are unlike those in *Scott* and are more akin to those in *Vincent*, as they focus on DOCS' initial imposition of the unlawful PRS term and subsequent failure to excise or prevent enforcement of that PRS term even after *Earley*, rather than on DOCS' failure to release Plaintiff from custody.

Defendants argue that they lacked the ability to unilaterally revoke Plaintiff's PRS term. (Defs. Mem. 11.) This argument is inapposite, and it recasts Plaintiff's complaint to mimic the claims in *Scott*, where the plaintiff asserted that DOCS committed a constitutional violation by failing to unilaterally revoke her PRS term. *Scott*, 616 F.3d at 109. The Second Circuit explicitly distinguished this argument in *Vincent*, noting that "[a]lthough *Scott* concluded . . . that there was no pleaded basis on which to rule that *Earley I* obligated [DOCS] 'unilaterally' to revoke Scott's PRS," *Earley* "afford[ed] the State two alternatives" for individuals subject to unlawful PRS terms: (1) "have them resentenced by the court for the imposition of PRS terms in a constitutional manner" or (2) "excise the PRS conditions from their records and relieve them of those conditions." *Vincent*, 718 F.3d at 172. As the Second Circuit found, it was DOCS' failure to take this or any "prompt action" after *Earley* that supported the *Vincent* plaintiff's claim based on the defendants' deliberate indifference to the constitutional violations. *Id.* at 173. Likewise, here, the Court finds that Plaintiff's allegations regarding Defendants' inaction after *Earley* to be sufficient, even assuming DOCS could not unilaterally revoke Plaintiff's PRS term.

For the same reasons, Defendants' alleged lack of involvement in Plaintiff's PRS violation proceeding and parole revocation proceeding is also unavailing. In *Vincent*, the Second Circuit addressed this same argument and found that the issue of Annucci's role in a parole revocation proceeding was inapposite because the claim against Annucci was not based on his role in revoking the plaintiff's parole, but arose instead from DOCS' ensuing custody of the

---

*See Vincent v. Yelich*, 718 F.3d 157, 172 (2d Cir. 2013). Framed in this manner, because of DOCS' conduct, Plaintiff suffered an injury-in-fact when he was subjected to an administratively-imposed PRS term and later re-incarcerated. *Vincent*, 718 F.3d at 173 ("[A]s punishment for their PRS violations they were returned to the custody of DOCS. . . [In *Earley*] we ruled that DOCS's ensuing custody . . . for such violations was unlawful."); *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006) ("[C]learly established Supreme Court precedent renders the five-year PRS term added to Earley's sentence by DOCS invalid . . . .").

12

plaintiff after the violation of the unlawful PRS. *Vincent*, 718 F.3d at 173 (noting that "as punishment for their PRS violations [the plaintiffs] were returned to the custody of DOCS" therefore, as noted in *Earley*, "whether DOCS had any participation in the parole revocation proceedings for alleged violation of PRS conditions, . . . DOCS's ensuing custody of [the plaintiffs] for such violations was unlawful"). Similarly, here, in addition to relying on allegations not found in the Complaint, Defendants attempt to reframe Plaintiff's allegations as concerning Defendants' role in his parole revocation proceeding. However, Plaintiff's claims do not arise from Defendants' role in those proceedings. They arise from Defendants' "flat defiance" of *Earley* in continuing to enforce, and failing to rectify, Plaintiff's unlawful PRS term, which resulted in his re-incarceration. (Compl. ¶¶ 24–27.) Accordingly, as Judge Irizarry held in denying Defendants' motion to dismiss, Plaintiff sufficiently alleges Defendants' personal involvement in a violation of his Fourteenth Amendment due process rights. *Santiago*, 2009 WL 3852001, at *4.

### c. Qualified immunity

Defendants argue that they are entitled to qualified immunity based on either their pre- or post-*Earley* conduct. (Defs. Mem. 14–18.)

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). As to whether the right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

13

"Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). Overall, "the relevant question is whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Id.* at 115 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in [the] litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, --- F. App'x ---, ---, 2015 WL 7147455, at *1 (2d Cir. Nov. 16, 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)); *Wright v. Manetta*, No. 14-CV-8976, 2016 WL 482973, at *4 (S.D.N.Y. Feb. 5, 2016) (citing *McKenna* and applying this standard in assessing qualified immunity defense raised on 12(c) motion). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, --- F. App'x at ---, 2015 WL 7147455, at *1 (alterations in original) (quoting *McKenna*, 386 F.3d at 436); *Cadwallader v. Devlin*, No. 15-CV-139, 2016 WL 81493, at *11 (N.D.N.Y. Jan. 7, 2016) (citing *McKenna* and applying same standard in assessing 12(c) motion).

### i. Plaintiff's claims based on pre-*Earley* conduct

Defendants are entitled to qualified immunity for conduct pre-dating the Second Circuit's decision in *Earley*. In *Scott*, the Second Circuit held that "it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Scott*, 616 F.3d at 107; *see Vincent*, 718 F.3d at 167 ("We thus ruled in Scott that *Earley I*'s holding did not mean that the *Wampler* principle that there was a right not to be subjected to administratively imposed PRS was clearly established for purposes of qualified immunity." (citations omitted)). Accordingly, to the extent Plaintiff's claims are based on the pre-*Earley* imposition and enforcement of his PRS term, Defendants are entitled to qualified immunity because it was not yet clearly established that the administrative imposition of PRS terms was a due process violation. *See Garcia v. Alk*, No. 09-CV-2045, 2015 WL 1469294, at *6 (E.D.N.Y. March 30, 2015) (granting qualified immunity for pre- but not post-*Earley* conduct).

### ii. Plaintiff's claims based on post-*Earley* conduct may continue

Defendants are not entitled to qualified immunity for conduct that post-dated *Earley*. Defendants assert that they are entitled to qualified immunity for their post-*Earley* conduct because their duty to act in response to *Earley* was not clearly established. (Defs. Mem. 15–18.) According to Defendants, Plaintiff has not alleged that Defendants knew about Plaintiff's unlawful PRS term and, therefore, to plead a claim for Defendants' post-*Earley* conduct, Plaintiff must establish that *Earley* "unequivocally created a legal obligation on [D]efendants to [(1)] sort through both administrative and court records to determine whether or not his sentence had been imposed judicially or administratively and [(2)] seek resentencing to correct any constitutional defect." (*Id.* at 16.) Defendants assert that the existence of such a duty was far from clear in

15

*Earley* and, moreover, New York State courts questioned the authority of Defendants to engage in conduct that amounts to "commend[ing] those in their custody to resentencing." (*Id.*) Defendants argue that it could not have been clear to Defendants that *Earley* created a legal obligation to refrain from enforcing Plaintiff's PRS term. (*Id.*)

Defendants' arguments misread Plaintiff's allegations, and ignore the holding in *Vincent*, which precludes Defendants' entitlement to qualified immunity at this stage. Plaintiff alleges that Defendants administratively imposed PRS on countless individuals who, like Plaintiff, were not subject to PRS at sentencing. (Compl. ¶ 16.) Defendants enforced those PRS terms in bad faith against individuals who, like Plaintiff, were not sentenced to PRS. (*Id.* ¶ 22.) Thereafter, according to Plaintiff, despite the Second Circuit's decision in *Earley*, Defendants failed to rectify those PRS terms and, instead, acted in "flat defi[ance]" of *Earley*'s "clear constitutional commands" by continuing to enforce PRS terms without authorization from a sentencing court. (*Id.* ¶ 25.) According to Plaintiff, this was all done "knowingly." (*Id.* ¶ 32.)

Taking Plaintiff's allegations as true, the Court cannot conclude that Defendants are entitled to qualified immunity at this stage. First, Plaintiff alleges that Defendants knowingly violated the law in enforcing his PRS term, which precludes qualified immunity. *Vincent*, 718 F.3d at 173 ("Qualified immunity is not available to those who knowingly violate the law." (citations and internal quotation marks omitted)). Second, Plaintiff alleges that despite their knowledge that "[a]ny addition to [his] sentence not imposed by the judge was unlawful," *Earley*, 451 F.3d at 75, Defendants took no steps to rectify the violation and continued enforcing his unlawful PRS terms, which was unreasonable in light of *Earley*. (Compl. ¶¶ 32, 35.) As the Second Circuit explained in *Vincent*, it was "clear from the[] alternatives [presented in *Earley*] that," as to individuals subject to administratively-imposed PRS terms, "the State was required

either to have them resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve them of those conditions." *Vincent*, 718 F.3d at 172. The Second Circuit explained that after *Earley*:

> DOCS, which (a) unconstitutionally imposed PRS, (b) was custodian of the records in which PRS was imposed and from which PRS was required to be excised (in the absence of appropriate resentencing), and (c) resumed custody of persons who violated the unconstitutionally imposed conditions and were penalized for those violations by reimprisonment, had an obligation to at least attempt to cease its administrative and custodial operations that had been held to violate federal law.

*Id.* at 172–73. Plaintiff alleges that, contrary to the options available after *Earley*, Defendants acted in "flat defiance" of *Earley* by failing to take any curative measures, and continuing to enforce the unlawful PRS terms of Plaintiff and others. (Compl. ¶ 25.)

Taken together, the Court finds that, as a number of courts have found in cases involving similar PRS-related claims against these same Defendants, Defendants' alleged failure to act was unreasonable and precludes qualified immunity at this stage. *See Betances v. Fischer*, No. 11-CV-3200, 2015 WL 4692441, at *6 (S.D.N.Y. Aug. 6, 2015) (denying Fischer, Annucci and others' fourth request for qualified immunity from liability for the imposition and enforcement of unlawful PRS terms, finding that "defendants have failed to show that they made reasonable efforts to comply with *Earley*"); *Hassell v. Fischer*, 96 F. Supp. 3d 370, 382 (S.D.N.Y. 2015) (denying Fischer, Annucci and others qualified immunity from due process claim based on the imposition and enforcement of an unlawful PRS term, noting that the defendants took any action to cure the violation for "over 27 months after . . . *Earley* and over 6 months after [the] PRS conditions were unconstitutionally-imposed on [the plaintiff]"); *Rivera v. Annucci*, No. 13-CV-1239, 2015 WL 590185, at *6 (E.D.N.Y. Feb. 11, 2015) (citing *Vincent* and denying qualified immunity for Annucci and Fischer, among other, as to a due process claim

based on imposition and enforcement of unlawful PRS term); *see also Garcia*, 2015 WL 1469294, at *7 (denying parole officials qualified immunity from a due process claim based on enforcement of a PRS term after *Earley*).

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for judgment on the pleadings. Plaintiff's claims for Defendants' imposition and enforcement of his unlawful PRS term that pre-dated the Second Circuit's decision in *Earley* are dismissed as Defendants are entitled to qualified immunity as to those claims. The Court denies Defendants' motion as to Plaintiff's claims based on Defendants' post-*Earley* conduct.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 21, 2016
      Brooklyn, New York